UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

BANK RHODE ISLAND
Appellant

v. C.A. No. 08-00014S

PAWTUXET VALLEY PRESCRIPTION
& SURGICAL CENTER, INC.
Appellee

ON APPEAL FROM AN ORDER OF THE
UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND

(In re Pawtuxet Valley Prescription & Surgical Center, Inc. BK No. 07-11767)

# APPELLEE'S OPENING BRIEF

Andrew S. Richardson (#2608)
Steven J. Boyajian (#7263)
Boyajian, Harrington & Richardson
182 Waterman Street
Providence, RI 02806
Tel. (401) 273-9600
Fax. (401) 273-9605

Date: February 27, 2008

TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………iii

I. ISSUES PRESENTED FOR REVIEW………………………………………1

II. STANDARD OF REVIEW…………………………………………………..1

III. STATEMENT OF THE CASE…………………………………………….2

*The Cash Collateral Order and the Initial Finding of Adequate Protection*……3

*The Motion to Obtain Postpetition Credit on a Secured Basis*……………..…...6

IV. ARGUMENT……………………………………………………………….9

*The postpetition line of credit obtained by the Debtor is neither diminishing the amount of collateral available to prepetition secured creditors nor is it demoting the claims of those creditors with respect to that collateral, and, therefore is not truly a priming lien*………………..........................................................................................11

*Even if cash collateral in which BankRI has an interest was used to purchase Synagis, the Synagis line of credit would improve BankRI's collateral position*……………………………………………….…13

*The secured claim of BankRI remains adequately protected despite the first position security interest of H.D. Smith in the Synagis collateral*…………………………………………………………..16

V. CONCLUSION…………………………………………………………......17

# TABLE OF AUTHORITIES

*Statutes*

11 U.S.C. § 361……………………………………………………………………4

11 U.S.C. § 363……………………………………………………………………3, 4

11 U.S.C. § 364……………………………………………………………..5, 7, 9, 10, 12, 15

11 U.S.C. § 552………………………………………………………………6, 7, 11, 12

11 U.S.C. § 1107……………………………………………………………..……….3

11 U.S.C. § 1108……………………………………………………………..……….3

*Cases*

Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695 (1934)…………………………….13

Unsecured Creditors Committee v. Marepcon Financial Corp. (In re Bumper Sales, Inc.), 907 F.2d 1430 (4th Cir. 1990)……………………….....11, 12

MBANK Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393 (10th Cir. 1987)…1

Bray v. Shenandoah Fed. Sav. and Loan Assoc. (In re Snowshoe Co., Inc.), 789 F.2d 1085 (4th Cir. 1986)………………………………………………………….2

Martin v. United States (In re Martin), 761 F.2d 472 (8th Cir. 1985)…………………….2

Slater Health Center, Inc. v. United States (In re Slater Health Center, Inc.), 306 B.R. 20, (D.R.I. 2004)…………………………………………………………..…..1

Singleton v. Wells Fargo Bank, N.A. (In re Singleton), 284 B.R. 322 (D.R.I. 2002)…….1

Beal Bank, S.S.B. v. Water's Edge L.P., 248 B.R. 668 (D.Mass. 2000)………………….2

In re Cafeteria Operators, L.P., 299 B.R. 400 (Bankr. N.D. Tex. 2003)………………….3

In re Package Design & Supply Co., Inc., 217 B.R. 422 (Bankr. W.D.N.Y. 1998)………………………………………………………………12

In re Mosello, 195 B.R. 277 (Bankr. S.D.N.Y.1996)……………………………..…13, 14

In re 495 Central Park Ave. Corp., 136 B.R. 626 (Bankr. S.D.N.Y. 1992)…………..…12

TABLE OF AUTHORITIES, Cont'd.

In re Ames Dept Store, Inc., 115 B.R. 34 (Bankr. S.D.N.Y. 1990)…………………...….10

In re Dunes Casino Hotel, 69 B.R. 784 (Bankr. D.N.J. 1986)………………………....…12

*Rules*

Fed. R. Bankr. P. 8013…………………………………………………………………….1

## I. ISSUES PRESENTED FOR REVIEW

A. Whether the Bankruptcy Court properly authorized the Debtor to obtain postpetition credit, secured by the inventory purchased on credit, the accounts receivable generated through its sale and the cash proceeds of those accounts receivable (the "Synagis Collateral")?

B. Whether the Bankruptcy Court properly determined that BankRI's interest in the property of the Debtor's bankruptcy estate was adequately protected such that the Debtor's drug supplier could be granted a first position security interest in the Synagis Collateral?

## II. STANDARD OF REVIEW

When a district court reviews a decision of a bankruptcy court on appeal, the factual findings of the bankruptcy court are reviewed for clear error. Fed. R. Bankr. P. 8013; Singleton v. Wells Fargo Bank, N.A. (In re Singleton), 284 B.R. 322, 323 (D.R.I. 2002). The district court may find that a clear error has been made by the bankruptcy court only if the evidence leaves the district court with the "definite and firm conviction that a mistake" was committed below. Slater Health Center, Inc. v. United States (In re Slater Health Center, Inc.), 306 B.R. 20, 23 (D.R.I. 2004). The bankruptcy court's legal determinations are reviewed de novo. Fed R. Bankr. P. 8013; In re Singleton, 284 B.R. at 323.

A finding of adequate protection made by a bankruptcy court is a finding of fact which may be reversed on appeal only upon a showing of clear error. See MBANK Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393, 1396-97 (10th Cir. 1987);

Bray v. Shenandoah Fed. Sav. and Loan Assoc. (In re Snowshoe Co., Inc.), 789 F.2d 1085, 1088 (4th Cir. 1986); Martin v. United States (In re Martin), 761 F.2d 472, 474 (8th Cir. 1985). A determination of value is also a finding of fact. See Beal Bank, S.S.B. v. Water's Edge L.P., 248 B.R. 668, 683 (D.Mass. 2000).

## III. STATEMENT OF THE CASE

*The Cash Collateral Order and the Initial Finding of Adequate Protection*

Pawtuxet Valley Prescription & Surgical Center, Inc. ("Debtor") is a Rhode Island corporation conducting business at 85 Sandy Bottom Road, Coventry, Rhode Island. The Debtor operates a retail pharmacy, offers custom compounding of prescriptions, sells durable medical equipment and provides home infusion therapy services. (Cash Collateral Joint Pretrial Order, ¶ 1) (hereinafter JPTO). The Debtor was incorporated in 1983 and since that time has been owned entirely by Leo R. Blais. Mr. Blais is also the Debtor's president and a pharmacist. (JPTO, ¶ 5).

The Debtor's business premises are leased from Sandy Bottom Properties, LLC ("Sandy Bottom") which owns the mini-mall style shopping center located at 59-85 Sandy Bottom Road, Coventry, Rhode Island ("Real Estate").[1] (JPTO, ¶ 4). For the purposes of the instant appeal, the stipulated fair market value of the Real Estate is $2.2 million. (JPTO, ¶ 9). Sandy Bottom's sole member is Leo R. Blais. (JPTO, ¶ 5). The Debtor occupies roughly three quarters of the Real Estate. The remaining space is leased to two unrelated companies offering medical services.

[1] On December 24, 2007, Sandy Bottom filed a voluntary chapter 11 petition in the Bankruptcy Court (BK No. 07-12699) thereby preventing the intended foreclosure upon the Real Estate by BankRI.

On September 4, 2007 ("Petition Date") the Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code") in the United States Bankruptcy Court for the District of Rhode Island ("Bankruptcy Court"). Since the Petition Date, the Debtor has been operating its business as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.[2]

As of the Petition Date, the Debtor was indebted to Bank Rhode Island ("BankRI") in the approximate amount of $2,475,000. (JPTO, ¶ 6). As security for this indebtedness, BankRI holds a first position security interest in substantially all of the Debtor's assets including inventory, equipment, accounts receivable and the proceeds thereof (including cash).[3] (JPTO, ¶ 7). The debt to BankRI is further secured by the guarantees of Leo R. Blais and Sandy Bottom and a first position mortgage upon the Real Estate. (JPTO, ¶ 8).

Immediately upon the commencement of the Debtor's bankruptcy, the Debtor sought permission to use "cash collateral" as that term is defined by 11 U.S.C. § 363(a). The cash collateral which the Debtor was allowed to use constitutes the proceeds of the Debtor's sale of inventory and collection of accounts receivable. The Debtor's use of the cash collateral could only be permitted if the value of BankRI's secured claim would not be diminished by the Debtor's use of the cash collateral. <u>See</u> 11 U.S.C. § 363(c)(2) and

---

[2] Unless otherwise noted, all statutory references refer to the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq.

[3] The security interest of BankRI in the Debtor's automobiles may be subordinate to certain purchase money security interests. However, BankRI stipulated that it "is the holder of a first position security interest in all of the assets of the Debtor." (Joint Pretrial Order, ¶ 7). BankRI drafted this paragraph of the Joint Pretrial Order. "Under the Bankruptcy Code, the Secured Creditor has the burden of proof on the issue of validity, priority and/or extent of its lien on" estate property. <u>In re Cafeteria Operators, L.P.</u>, 299 B.R. 400, 406 (Bankr. N.D. Tex. 2003); <u>see</u> 11 U.S.C. § 363(p)(2). Manuel C. Ponte testified that he attributed approximately $60,000 of value to the vehicles in his appraisal. (Transcript, Sep. 21, 2007, p.30).

(e). Stated differently, in order to allow the Debtor to use cash collateral to fund its ongoing operations, the Bankruptcy Court had to find that BankRI's secured claim, as it existed on the Petition Date, was "adequately protected." See 11 U.S.C. §§ 361 and 363(e).

The Debtor argued that BankRI's claim was fully secured as of the Petition Date and that the value of its secured claim was adequately protected by the Debtor's equity in the collateral over and above the amount of the BankRI's claim. (Memorandum of Law in Support of Debtor's Emergency Motion for Orders (1) Approving Use of Cash Collateral, and (2) Setting Procedures for Notice and Hearing, p. 5). BankRI countered that the collateral which secured its claim was worth less than the amount of the claim and, therefore, that BankRI's claim was not protected by an equity cushion. (Order Allowing Use of Cash Collateral, October 5, 2007, p.1).

On October 5, 2007 the Bankruptcy Court entered an Order Allowing Use of Cash Collateral ("Cash Collateral Order"). The Bankruptcy Court found that BankRI's secured claim was adequately protected by an equity cushion even if, as BankRI had suggested, approximately $1.1 million in accounts receivable were completely ignored for the purposes of the calculation. (Cash Collateral Order, p.3). The Bankruptcy Court explicitly did not determine that the actual value of the accounts receivable was zero, only that they need not be considered in order to determine that BankRI is adequately protected. (Cash Collateral Order, pp. 2, 3). In determining that BankRI's secured claim was adequately protected the Bankruptcy Court found as follows:

1. The fair market value of the Real Estate is $2.2 million and that the fair market value was the proper standard of valuation under the circumstances of this case;

2. A conservative estimation of value of the Debtor's medical equipment and machinery is $253,700 even at liquidation value;

3. The value of the Debtor's vehicles and inventory is $125,000; and

4. The valuation of BankRI's additional collateral was unnecessary given that the assets which were valued adequately protected BankRI's secured claim by themselves.

(Cash Collateral Order, p. 4) The value of these assets alone, $2,578,700, exceeded the amount of BankRI's claim by more than $100,000. (JPTO, ¶ 6). Consequently, the Bankruptcy Court found that BankRI was adequately protected by an equity cushion and authorized the use of cash collateral for sixty days.[4]

*The Motion to Obtain Postpetition Credit on a Secured Basis*

Three days after the entry of the Cash Collateral Order, the Debtor filed a Motion to Obtain Postpetition Credit on a Secured Basis pursuant to 11 U.S.C. § 364(c) and (d) ("Credit Motion"). The proposed postpetition line of credit was necessary in order for the Debtor to order an inventory of the drug Synagis.

Historically, a mainstay of the Debtor's business has been the administration of Synagis. During the fiscal year ending September 30, 2007, the Debtor purchased $1,735,138 worth of Synagis and generated Synagis sales of $2,874,873. (Transcript, October 18, 2007, pp. 9-10). The identifiable incremental cost of administering Synagis totaled approximately $54,700 primarily in per diem wages and mileage reimbursements.

[4] The Debtor's authority to use cash collateral was extended several times by the Bankruptcy Court. Commencing on January 28, 2008, the Bankruptcy Court held six days of evidentiary hearings to consider the current status of BankRI's adequate protection in connection with the Debtor's use of cash collateral. The continued use of cash collateral is under advisement by the Bankruptcy Court as of the submission of this brief.

The initial Cash Collateral Order of October 5, 2007 is on appeal to this Court (07-390S) ("Cash Collateral Appeal").

(Transcript, October 18, 2007, p.11). Therefore, during the 2006-2007 fiscal year the sale of Synagis added approximately $1 million to the Debtor's gross profit. (Transcript, October 18, 2007, P.12).

Synagis is administered to premature babies by monthly injection during the flu season (late October to April) in order to stave off respiratory ailments. (Transcript, October 18, 2007, p. 15). The cost of Synagis and the strict requirements concerning the timing of its administration result in the need for a substantial inventory in order to take part in Synagis sales. At the beginning of the 2007-2008 flu season the Debtor determined that the only means available to purchase a sufficient supply of Synagis would be a line of credit from a supplier. The Debtor's efforts to obtain such a line of credit on an unsecured basis proved unsuccessful. (Transcript, October 18, 2007, pp. 4-5). Consequently, on October 8, 2007 the Debtor filed a Motion to Obtain Postpetition Credit on a Secured Basis ("Credit Motion").

Through the Credit Motion the Debtor sought authority to obtain a line of credit from H.D. Smith Wholesale Drug Company ("H.D. Smith") and to secure that line of credit with a first position security interest in any Synagis provided on credit, the receivables generated through the sale of those drugs ("Synagis Receivables") and the cash proceeds of the Synagis Receivables (collectively referred to as the "Synagis Collateral"). (Credit Motion, p. 3). The security interest of H.D. Smith would be limited to the cost of the Synagis which it provided on credit. Because the Synagis Collateral was not acquired prior to the commencement of the case these assets would not initially be subject to the security interest of BankRI. See 11 U.S.C. § 552. Therefore, the Credit

Motion sought authority to obtain credit pursuant to 11 U.S.C. § 364(c) secured by otherwise unencumbered assets.

The Debtor acknowledged, however, that it may need to use some cash which was subject to BankRI's security interest in order to service the Synagis line of credit prior to collection of the first Synagis receivables. (Credit Motion, p. 5, Transcript, October 18, 2007, p. 18). To the extent cash collateral was used to the generate the Synagis Collateral, the Synagis Collateral would be subject to the continuing security interest of BankRI. See 11 U.S.C. § 552(b)(1). Therefore, the Debtor also sought authority to obtain credit from H.D. Smith pursuant to §364(d) secured by a first position lien on the Synagis Collateral.[5]

BankRI objected to the Credit Motion and three days of hearings were held before the Bankruptcy Court. The Debtor argued and presented evidence which demonstrated that as Synagis was sold, the amount of the receivables would exceed the cost of Synagis provided on credit. (Transcript, October 18, 2007, p. 12). Therefore, the Credit Motion did not seek to subordinate BankRI's interest in collateral which was already in the Debtor's possession. Rather, the Debtor's proposed line of credit would give rise to a new pool of Synagis Collateral. By limiting H.D. Smith's security interest to these assets, BankRI's security interest in the Debtor's existing assets would remain intact. These assets had been determined to adequately protect BankRI's claim only three days prior to the filing of the Credit Motion. (Cash Collateral Order, pp. 4-5). The Debtor further argued that BankRI would ultimately benefit from the proposed line of credit because the value of the Synagis Collateral which exceeded the amount of H.D. Smith's claim would act as additional collateral for the BankRI debt.

[5] The Debtor agreed to provide BankRI a second position security interest in the Synagis Collateral.

In order to establish that BankRI was adequately protected despite the proposed security interest of H.D. Smith, the Debtor relied upon the Bankruptcy Court's Cash Collateral Order. The Cash Collateral Order contained a finding that BankRI's claim was secured by assets which exceeded the total amount of the claim even if over $1.1 million of accounts receivable, the personal guarantee of the Debtor's principal and the Debtor's goodwill were completely ignored. (Cash Collateral Order, pp. 4-5). The Bankruptcy Court determined that this equity cushion adequately protected BankRI while the Debtor used cash collateral. In the context of the Credit Motion, the Debtor argued that BankRI was adequately protected by this same equity cushion even if some cash collateral was used to purchase inventory in which H.D. Smith held a first position security interest. In fact, BankRI's collateral position would improve as the sale of each dose of Synagis generated an account receivable which was greater than the incremental cost of purchasing and administering the dose. (Exhibit A attached to Debtor's Credit Motion, p.2.)[6]

Ignoring this, BankRI argued that it was not adequately protected because the equity cushion which was found to exist in the Cash Collateral Order depended on the Real Estate being valued at its stipulated fair market value of $2.2 million. BankRI urged the Bankruptcy Court to use a lower liquidation value of the Real Estate in calculating whether an equity cushion existed. (Transcript, October 18, 2007, pp.28-29). The Bankruptcy Court declined BankRI's invitation. BankRI also spent a considerable amount of time insisting that the Debtor's Synagis operations would not result in the overall profit which the Debtor had projected. Instead, BankRI projected through April

---

[6] A copy of the attachment to the Debtor's credit motion is attached to this brief and is hereinafter referred to as Appendix 1.

2008 that the Debtor's total profit across all divisions of its business (including Synagis) would be approximately $61,000.[7] (Transcript, November 8, 2007, p. 34).

The Debtor countered that the $61,000 profit, including Synagis sales, projected by BankRI was better for all parties in interest, including BankRI, than the losses which would likely result from not taking part in the sale of Synagis. (Transcript, November 8, 2007, p. 67).

The Bankruptcy Court entered an Order granting the Debtor's Credit Motion on November 29, 2007 ("Credit Order"). This appeal followed.

## IV. ARGUMENT

Section 364 of the Bankruptcy Code states in relevant part

> (c) …the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—…
>
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien…
>
> (d)(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—…
>
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

This statute allows a debtor to obtain postpetition credit on a secured basis if the debtor is

[7] BankRI suggested to the Bankruptcy Court, and in its brief to this Court, that the Debtor's projections concerning Synagis (Appendix 1) were misleading. The Debtor's projections clearly projected only the incremental costs and benefits of selling Synagis. Stated differently, the projections were intended to demonstrate the benefit to the Debtor and its creditor which could be realized by selling Synagis as opposed to not selling Synagis. (Transcript, October 18, 2007, p. 12).

unable to obtain credit on an unsecured basis.[8] See 11 U.S.C. § 364(c) and (d). If authorized by the bankruptcy court after notice and a hearing, a debtor may obtain postpetition secured credit which is either secured by property which is unencumbered (§ 364(c)) or by subordinating preexisting security interests to the security interest of the party extending postpetition credit (§ 364(d)). The security interest which displaces the preexisting security interests of prepetition creditors is known as a "priming lien." To the extent a debtor proposes to subordinate a creditor's security interest to a priming lien, a debtor must demonstrate that the subordinated creditor will remain adequately protected despite the subordination of its lien. 11 U.S.C. § 364(d)(1)(B). However, to the extent unencumbered property of the estate is pledged to secure postpetition credit, the secured claims of prepetition creditors are unaffected.

The Bankruptcy Court properly authorized the Debtor to obtain postpetition credit on a secured basis because the evidence presented demonstrated that the majority of the Synagis Collateral would not be encumbered by BankRI's prepetition security interest. (Transcript, October 18, 2007, p. 18).To the extent BankRI's security interest did extend to the Synagis Collateral, the collateral position of BankRI was being enhanced rather than diminished by the proposed post petition credit. (Transcript, October 18, 2007, p.12). Finally, the Bankruptcy Court properly determined that BankRI's secured claim would remain adequately protected despite the proposed security interest of H.D. Smith. This adequate protection was established by the Debtor and found by the Bankruptcy

[8] Debtor's counsel made representations to the Bankruptcy Court that the Debtor's efforts to obtain credit on an unsecured basis were unsuccessful. See 11 U.S.C. § 364(c) and (d)(1)(A) This representation was never disputed. Debtor's counsel and the Debtor sought to obtain a supply of Synagis on more favorable terms from H.D. Smith and AmerisourceBergen Drug Corporation (the Debtor's prepetition supplier). These efforts were unsuccessful. (Transcript, October 18, 2007, pp. 4-5). See In re Ames Dept Store, Inc., 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990)(stating, "a debtor is not required to seek credit from every possible source.")

Court in the Cash Collateral Order notwithstanding the fact that over $1.1 million in accounts receivable and other valuable sources of collateral for BankRI's claim were not considered in calculating the bank's collateral position. (Cash Collateral Order, p. 5).

*The postpetition line of credit obtained by the Debtor is neither diminishing the amount of collateral available to prepetition secured creditors nor is it demoting the claims of those creditors with respect to that collateral, and, therefore is not truly a priming lien.*

Since the commencement of this bankruptcy, BankRI's secured claim against the Debtor has been subject to § 552(a) of the Bankruptcy Code which generally invalidates the effect of prepetition security agreements containing after acquired property clauses. See 11 U.S.C. § 552(a)(stating, "property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from a security agreement entered into by the debtor before the commencement of the case"). None of the property acquired by the Debtor following the commencement of the case is encumbered by BankRI's security interest unless the property is proceeds, products or offspring of BankRI's prepetition collateral. See 11 U.S.C. 552(b)(1); Unsecured Creditors Committee v. Marepcon Financial Corp. (In re Bumper Sales, Inc.), 907 F.2d 1430, 1436 (4th Cir. 1990). Because BankRI held a prepetition security interest in the Debtor's inventory, accounts receivable and cash, most assets acquired by the Debtor since the commencement of the case have been subject to BankRI's continuing security interest. See id. at 1439. For example, an item of inventory which the Debtor owned as of the Petition Date could be sold following the Petition Date thereby generating an account receivable. That account receivable would be subject to the security interest of BankRI because it would be the product or proceeds of prepetition collateral. See 11 U.S.C.

552(b); In re Bumper Sales, Inc. 907 F.2d at 1439. Likewise, the cash generated by the collection of that account receivable and the new inventory purchased with that cash would remain subject to BankRI's security interest. See id.

When the Debtor acquires assets which are not the products or proceeds of BankRI's prepetition collateral, the Debtor acquires those assets free of BankRI's floating lien. See 11 U.S.C. § 552(a); In re Bumper Sales, Inc., 907 F.2d at 1436. Therefore, the Synagis which the Debtor proposed to obtain from H.D. Smith without advance payment would not be subject to BankRI's security interest when received. See id. Likewise, upon the sale of the Synagis received on credit, the account receivable generated or cash collected would not be subject to BankRI's security interest. See id.

Despite this, BankRI insists that its security interest has been subordinated to a priming lien. (Appellant's Opening Brief, p. 11). This ignores the fact that a priming lien typically displaces a secured creditor's interest in preexisting collateral in favor of a new postpetition creditor. See e.g., In re Dunes Casino Hotel, 69 B.R. 784, 787 (Bankr. D.N.J. 1986). Through the Credit Motion, the Debtor sought to develop a substantial new pool of assets which would not only secure the Synagis line of credit but which would also enhance the collateral position of BankRI to the extent it could trace its cash collateral into the pool of Synagis Collateral. See In re Package Design & Supply Co., Inc., 217 B.R. 422, 425-26 (Bankr. W.D.N.Y. 1998); In re 495 Central Park Ave. Corp., 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992)(holding that adequate protection in the context of § 364(d) hinges on a determination of whether the value of the Debtor's assets will increase as a result of the proposed credit). If however, no cash collateral in which BankRI had an interest were used in servicing the Synagis line of credit, then BankRI would not be

entitled to any interest in the Synagis Collateral. See Local Loan Co. v. Hunt, 292 U.S. 234, 243, 54 S.Ct. 695, 698-99 (1934)(holding that a prepetition secured creditor has no interest in property "not existent when the bankruptcy became effective").

*Even if cash collateral in which BankRI has an interest was used to purchase Synagis, the Synagis line of credit would improve BankRI's collateral position*

Although the Debtor hoped to service the Synagis line of credit without using the cash collateral in which BankRI had an interest, the Debtor acknowledge that a limited amount of cash collateral may be used to service the line of credit before the first Synagis Receivables would be collected. (Transcript, October 18, 2007, p. 18). For this reason, the Debtor sought the Bankruptcy Court's approval to grant a priming lien to H.D. Smith in the event such a lien was necessary. (Credit Motion, p. 5). The Debtor demonstrated that BankRI would remain adequately protected despite the potential priming lien because (1) BankRI's collateral position would be enhanced by the Debtor's sale of Synagis, and (2) the collateral which the Bankruptcy Court determined was sufficient to adequately protect BankRI during the Debtor's use of cash collateral were unaffected by the proposed Synagis line of credit.

BankRI correctly points out that courts must be particularly cautious in approving secured postpetition financing to ensure that creditors whose liens are displaced are not unjustifiably put in further jeopardy by the proposed financing. See In re Mosello, 195 B.R. 277, 289 (Bankr. S.D.N.Y.1996). This concern did not arise in this case because the proposed Synagis line of credit did not displace the lien of BankRI with respect to any collateral in which BankRI had an interest. BankRI cites In re Mosello to suggest that the security interest of H.D. Smith is somehow jeopardizing its secured position. (Appellant's

Brief, p. 11). However, the facts of In re Mosello illustrate exactly why the Bankruptcy Court was correct in approving the Synagis line of credit.

The debtors in In re Mosello sought to subordinate the mortgage of an undersecured creditor against a parcel of real estate to a postpetition lender. 195 B.R. at 279. The proceeds of the postpetition loan were intended to fund the development of the real estate. In re Mosello, 195 B.R. at 280. The debtors asserted that the increased value of the real estate upon completion of the development was protection enough for the prepetition secured creditor. Id. at 288. The estimated time to completion of the development was approximately three years. Id. at 291. In rejecting the debtor's bid to obtain postpetition financing, the bankruptcy court noted that the proposed postpetition financing and development was speculative at best. Id. at 290. The development depended on permitting, zoning approvals, and obtaining a sufficient sales price for the developed land. Id. at 280. Furthermore, each dollar advanced by the proposed postpetition lender would diminish, dollar for dollar, the secured position of the debtors' prepetition secured creditor. Id. at 292.

In contrast, the proposed Synagis line of credit did not displace the security interest of BankRI with respect to any existing collateral. Rather, H.D. Smith's security interest would attach only to new collateral provided to the Debtor on credit. This collateral would not exist at all if not for the Synagis line of credit because the Debtor's cash position at the time would not allow for the purchase of Synagis. Upon the first shipment of Synagis, H.D. Smith's security interest would attach to the entire Synagis inventory. However, each dose of Synagis administered would give rise to a receivable which exceeded the amount of H.D. Smith' claim with respect to that dose. The gross

profit margin of each dose administered would inure to the benefit of BankRI and enhance rather than diminish BankRI's secured position. (Memorandum of Law in support of Debtor's Motion to Obtain Postpetition Credit on a Secured Basis, p.6, Appendix 1, p.2).

The unrequited evidence presented at the hearing on the Debtor's Credit Motion demonstrated that approximately $75,000 of cash collateral in which BankRI had an interest would be used in connection with the purchase of Synagis, if it was necessary at all. (Transcript, October 18, 2007, p. 18). The Debtor projected Synagis sales for the season totaling approximately $3,133,634 and a cost of goods of $1,891,314. (Appendix 1, p.2). BankRI did not dispute this projection. (BankRI DIP Exhibit #8). In order to generate $1,242,320 in gross profit from Synagis sales, the Debtor projected additional operating expenses of $57,475. (Appendix 1, p. 2). Since the secured claim of H.D. Smith would, by definition, be limited to the cost of the goods shipped on credit, more than $1 million in receivables and cash would conceivably be generated which would not be subject to H.D. Smith's security interest. These assets demonstrate that the Synagis line of credit was not only in the best interests of the Debtor and the estate, but also in the best interest of BankRI.

BankRI has had sophisticated bankruptcy counsel throughout these proceedings and was likely aware that without a stay pending appeal H.D. Smith's security interest in the Synagis Collateral would be unassailable. See 11 U.S.C. § 364(e). However, BankRI neither obtained nor sought a stay of the Order granting the Debtor's Motion to Obtain Postpetition Credit on a Secured basis. This inaction probably results from an understanding of the arithmetic in the preceding paragraph and an implicit

acknowledgement that the sale of Synagis by the Debtor was preferable to the Debtor's continued operation without the sale of Synagis. Despite this, BankRI today argues that it was unjustifiably put at risk by the Synagis line of credit.[9] BankRI's opposition to the Credit Motion more likely arises from a desire to see the Debtor's assets liquidated to immediately pay its claim than from a serious contention that the Synagis line of credit placed BankRI at additional risk.

Given the evidence that the proposed Synagis line of credit would enhance rather than diminish BankRI's secured position, it cannot be reasonably argued that the Bankruptcy Court was clearly erroneous in determining that BankRI remained adequately protected despite the proposed security interest of H.D. Smith.

*The secured claim of BankRI remains adequately protected despite the first position security interest of H.D. Smith in the Synagis collateral.*

In the Cash Collateral Order, the Bankruptcy Court determined that BankRI's secured claim was adequately protected by the Debtor's equipment and inventory and by the Real Estate owned by Sandy Bottom. (Cash Collateral Order, pp. 4-5). In its Credit Motion, the Debtor did not propose to grant a security interest to H.D. Smith in any of these assets and in the Court's Order granting the Credit Motion, H.D. Smith was not given any interest in these assets. H.D. Smith would be granted a security interest in a new pool of assets which would not have existed had the Credit Motion not been granted. Therefore, BankRI's secured claim as it existed on the petition date would not be impaired by the Synagis line of credit.

---

[9] The end of the Debtor's Synagis season is weeks away. The outcome of this appeal will, almost assuredly, have no material effect on the administration of the Debtor's estate or BankRI's security interest.

Nonetheless, BankRI claimed that it was not adequately protected because the Bankruptcy Court attributed a stipulated fair market value of $2.2 million to the Real Estate rather than some lower liquidation value. (Transcript, October 18, 2007, pp.27-29). BankRI also argued that it was not adequately protected because the Debtor has suffered operational losses in the first two months of its bankruptcy. BankRI made these identical arguments to the Bankruptcy Court in connection with the hearing on the Debtor's motion to use cash collateral and has presented these arguments to this Court in the pending Cash Collateral Appeal.

In connection with BankRI's appeal of the Cash Collateral Order, the Debtor has briefed the issue of the proper standard of valuation of the Real Estate and the impact of the Debtor's operations on a determination of adequate protection. The Debtor relies on the arguments and authorities which are presented in its brief in the Cash Collateral Appeal which is attached as Appendix 2.

## V. CONCLUSION

The Debtor's Credit Motion sought to grant a security interest in unencumbered collateral to a postpetition supplier. The Debtor acknowledged that a limited amount of cash collateral in which BankRI had an interest might be used to service the Synagis line of credit thereby giving BankRI a limited interest in the Synagis Collateral. The Debtor therefore presented evidence to demonstrate that the Synagis line of credit would result in the enhancement of BankRI's collateral pool despite the limited first position security interest of H.D. Smith. The Debtor also relied on the Cash Collateral Order in which the Bankruptcy Court found that BankRI was adequately protected by assets which were

unaffected by the proposed line of credit and the Debtor's postpetition operations. Given this background, the conclusions of the Bankruptcy Court with respect to the Credit Motion were not clearly erroneous and therefore its decision must be affirmed.

PAWTUXET VALLEY PRESCRIPTION &
SURGICAL CENTER, INC.

By its Attorneys,

/s/ Steven J. Boyajian
Andrew S. Richardson (#2608)
Steven J. Boyajian (#7263)
Boyajian, Harrington & Richardson
182 Waterman Street
Providence, RI 02906
Tel. (401) 273-9600
Fax. (401) 273-9605

C.A. No. 08-00014S

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2008 I electronically filed Appellee's Opening Brief with the Clerk of the U. S. District Court using the CM/ECF System. The following participants have received notice electronically:

- **Steven J. Boyajian**
  steve@bhrlaw.com
- **Leonard J. DePasquale**
  leonard.j.depasquale@usdoj.gov
- **Andrew S. Richardson**
  andy@bhrlaw.com
- **Denean M. Russo**
  drusso@mwdglaw.com,mdaugherty@mwdglaw.com
- **Robert D. Wieck**
  rwieck@mwdglaw.com,mdaugherty@mwdglaw.com

/s/ Susanne Kershaw