UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

BANK RHODE ISLAND
Appellant

v. C.A. No. 07-390S

PAWTUXET VALLEY PRESCRIPTION
& SURGICAL CENTER, INC.
Appellee

ON APPEAL FROM AN ORDER OF THE
UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND

(In re Pawtuxet Valley Prescription & Surgical Center, Inc. BK No. 07-11767)

# APPELLEE'S OPENING BRIEF

Andrew S. Richardson (#2608)
Steven J. Boyajian (#7263)
Boyajian, Harrington & Richardson
182 Waterman Street
Providence, RI 02806
Tel. (401) 273-9600
Fax. (401) 273-9605

Date: January 8, 2008

TABLE OF CONTENTS

Table of Authorities…………………………………………………………………iii

I. Statement of the Issues………………………………………………………........1

II. Standard of Review…………………………………………………………………..1

III. Statement of the Case…………………………………………………………… 2

IV. Argument…………………………………………………………………………….7

A. The Debtor's use of cash collateral is dependent on adequate protection of BankRI's secured claim………………………………………7

B. An equity cushion is sufficient in itself to adequately protect a secured claim………………………………………8

C. The Bankruptcy Court properly concluded that BankRI's equity cushion was itself sufficient to provide adequate protection.………………………………………………………………...11

D. The Bankruptcy Court correctly determined that fair market value is the standard of valuation which applies to assets which will be retained and used....................................................12

1. BankRI mischaracterizes the Bankruptcy Court's evaluation of its collateral…………………………...12

2. The Bankruptcy Court properly determined that fair market value should be attributed to the Real Estate for the purpose of determining whether BankRI's secured claim is adequately protected……………………………………13

V. Conclusion……………………………………………………………………….18

# TABLE OF AUTHORITIES

## Statutes

11 U.S.C. §§ 361, 363, 506, 1107 and 1108.

## Cases

Associates Commercial Corp. v. Rash, 520 U.S. 953, 117 S.Ct. 1879 (1997)

United Sav. Ass's of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 108 S.Ct. 626 (1988)

Taffi v. United States (In re Taffi), 68 F.3d 306 (9th Cir. 1997)

Baybank-Middlesex v. Ralar Distributors, Inc, 69 F.3d 1200 (1st Cir. 1995)

In re Old Winthrop Farms Nurseries, Inc. v. New Bedford Institution for Sav. (In re Winthrop Old Farms Nursery, Inc.), 50 F.3d 72 (1st Cir. 1995)

Matter of Vitreous Steel Products Co., 911 F.2d 1223 (7th Cir. 1990)

First Fidelity Bank v. Public Service Co. of New Hampshire (In re Public Service Co. of New Hampshire), 879 F.2d 987 (1st Cir. 1989)

MBANK Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393 (10th Cir. 1987)

Bray v. Shenandoah Fed. Sav. and Loan Assoc. (In re Snowshoe Co., Inc.), 789 F.2d 1085 (4th Cir. 1986)

Martin v. United States (In re Martin), 761 F.2d 472 (8th Cir. 1985)

Slater Health Center, Inc. v. United States (In re Slater Health Center, Inc.), 306 B.R. 20 (D.R.I. 2004)

Singleton v. Wells Fargo Bank, N.A. (In re Singleton), 284 B.R. 322 (D.R.I. 2002)

Beal Bank, S.S.B. v. Water's Edge L.P., 248 B.R. 668 (D.Mass. 2000)

In re Cafeteria Operators, L.P., 299 B.R. 400 (Bankr. N.D. Tex. 2003)

In re Byington, 197 B.R. 130 (Bankr. D. Kan. 1996)

In re Dynaco Corp., 162 B.R. 389 (Bankr. D.N.H. 1993)

In re Demakes Enters., 145 B.R. 362 (Bankr. D.Mass. 1992)

In re Robertson, 135 B.R. 350 (Bankr. E.D. Ark. 1992)

In re Ledgmere Land Corp., 125 B.R. 58 (Bankr. D. Mass. 1991)

In re Robbins, 119 B.R. 1 (Bankr. D. Mass. 1990)

In re Lane, 108 B.R.6 (Bankr. D. Mass. 1989)

In re Triplett, 87 B.R. 25 (Bankr. S.D. Tex. 1988)

In re T.H.B. Corp., 85 B.R. 192 (Bankr. D.Mass. 1988)

United States v. Smithfield Estates, Inc. (In re Smithfield Estates, Inc.), 48 B.R. 910 (Bank. D.R.I. 1985)

In re Aegean Fare, Inc., 33 B.R. 745 (Bankr. D. Mass. 1983)

In re Elliott Leases Cars, Inc., 20 B.R.893 (Bankr. D.R.I. 1982)

Rules

Federal Rule of Bankruptcy Procedure 8013

Legislative Reports

H.R.Rep. No. 95-595 (1977), reprinted in 1978 U.S.C.C.A.N. 5787

H.R.Rep. No. 95-595 (1977), reprinted in 1978 U.S.C.C.A.N. 5963

Secondary Sources

Black's Law Dictionary (7th ed. 1999)

I. STATEMENT OF THE ISSUES

Whether the value of the Appellant's secured claim is adequately protected such that the Appellee may use cash collateral in the course of its operations?

II. STANDARD OF REVIEW

When a district court reviews a decision of a bankruptcy court on appeal, the factual findings of the bankruptcy court are reviewed for clear error. Fed. R. Bankr. P. 8013; Singleton v. Wells Fargo Bank, N.A. (In re Singleton), 284 B.R. 322, 323 (D.R.I. 2002). The district court may find that a clear error has been made by the bankruptcy court only if the evidence leaves the district court with the "definite and firm conviction that a mistake" was committed below. Slater Health Center, Inc. v. United States (In re Slater Health Center, Inc.), 306 B.R. 20, 23 (D.R.I. 2004). The bankruptcy court's legal determinations are reviewed de novo. Fed R. Bankr. P. 8013; In re Singleton, 284 B.R. at 323.

A finding of adequate protection made by a bankruptcy court is a finding of fact which may be reversed on appeal only upon a showing of clear error. See MBANK Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393, 1396-97 (10th Cir. 1987); Bray v. Shenandoah Fed. Sav. and Loan Assoc. (In re Snowshoe Co., Inc.), 789 F.2d 1085, 1088 (4th Cir. 1986); Martin v. United States (In re Martin), 761 F.2d 472, 474 (8th Cir. 1985). A determination of value is also a finding of fact. See Beal Bank, S.S.B. v. Water's Edge L.P., 248 B.R. 668, 683 (D.Mass. 2000).

While some courts have determined that a factual determination of value is predicated upon the legal question of which standard of valuation is applicable in a particular case, (See e.g. In re Old Winthrop Farms Nurseries, Inc. v. New Bedford Institution for Sav.

(In re Winthrop Old Farms Nursery, Inc.), 50 F.3d 72 (1st Cir. 1995) In re Byington, 197 B.R. 130, 134 (Bankr. D. Kan. 1996)), the better view is that the standard of valuation to be employed in a particular case is itself a question of fact as the choice of the standard is dependent upon the facts and circumstances which a particular case presents. See Matter of Vitreous Steel Products Co., 911 F.2d 1223, 1232-33 (7th Cir. 1990); In re Robertson, 135 B.R. 350, 352 (Bankr. E.D. Ark. 1992)(stating, "There is no clear-cut formula or benchmark for valuing creditor's collateral; valuation depends on facts and evidence presented in each particular case."); H.R.Rep. No. 95-595, at 356 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 6312 (stating, "Courts will have to determine value on a case-by-case basis, taking into account the facts of each case and the competing interests in the case").

## III. STATEMENT OF THE CASE

Pawtuxet Valley Prescription & Surgical Center, Inc. ("Debtor") is a Rhode Island corporation conducting business at 85 Sandy Bottom Road, Coventry, Rhode Island. The Debtor operates a retail pharmacy, offers custom compounding of prescriptions, sells durable medical equipment and provides home infusion therapy services. (Joint Pretrial Order, ¶ 1) (hereinafter JPTO). The Debtor was incorporated in 1983 and since that time has been owned entirely by Leo R. Blais. Mr. Blais is also the Debtor's president and a pharmacist. (JPTO, ¶ 5).

The Debtor's business premises are leased from Sandy Bottom Properties, LLC ("Sandy Bottom") which owns the mini-mall style shopping center located at 59-85 Sandy Bottom Road, Coventry, Rhode Island ("Real Estate").[1] (JPTO, ¶ 4). For the

[1] On December 24, 2007, Sandy Bottom filed a voluntary chapter 11 petition in the Bankruptcy Court (BK No. 07-12699) thereby preventing the intended foreclosure upon the Real Estate by BankRI.

purposes of the instant appeal, the stipulated fair market value of the Real Estate is $2.2 million. (JPTO, ¶ 9). Sandy Bottom's sole member is Leo R. Blais. (JPTO, ¶ 5). The Debtor occupies roughly three quarters of the Real Estate. The remaining space is leased to two unrelated companies offering medical services.

On September 4, 2007 ("Petition Date") the Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code ("Bankrutcy Code") in the United States Bankruptcy Court for the District of Rhode Island ("Bankruptcy Court"). Since the Petition Date, the Debtor has been operating its business as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.[2]

As of the Petition Date, the Debtor was indebted to Bank Rhode Island ("BankRI") in the approximate amount of $2,475,000. (JPTO, ¶ 6). As security for this indebtedness, BankRI holds a first position security interest in substantially all of the Debtor's assets including inventory, equipment, accounts receivable and the proceeds thereof (including cash).[3] (JPTO, ¶ 7). The debt to BankRI is further secured by the guarantees of Leo R. Blais and Sandy Bottom and a first position mortgage upon the Real Estate. (JPTO, ¶ 8).

Immediately upon the commencement of the Debtor's bankruptcy, the Debtor sought permission to use "cash collateral" as that term is defined by 11 U.S.C. § 363(a).

---

[2] Unless otherwise noted, all statutory references refer to the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq.

[3] The security interest of BankRI in the Debtor's automobiles may be subordinate to certain purchase money security interests. However, BankRI stipulated that it "is the holder of a first position security interest in all of the assets of the Debtor." (Joint Pretrial Order, ¶ 7). BankRI drafted this paragraph of the Joint Pretrial Order. "Under the Bankruptcy Code, the Secured Creditor has the burden of proof on the issue of validity, priority and/or extent of its lien on" estate property. In re Cafeteria Operators, L.P., 299 B.R. 400, 406 (Bankr. N.D. Tex. 2003); see 11 U.S.C. § 363(p)(2). Manuel C. Ponte testified that he attributed approximately $60,000 of value to the vehicles in his appraisal. (Transcript, Sep. 21, 2007, p.30).

The cash collateral which the Debtor was allowed to use constitutes the proceeds of the Debtor's sale of inventory and collection of accounts receivable. This cash is, therefore, subject to security interest of BankRI. BankRI objected to the Debtor's use of cash collateral. Consequently, the Debtor's use of the cash collateral could only be permitted if the value of BankRI's secured claim would not be diminished by the Debtor's use of the cash collateral. See 11 U.S.C. § 363(c)(2) and (e). Stated differently, in order to allow the Debtor to use cash collateral to fund its ongoing operations, the Bankruptcy Court had to find that BankRI's secured claim, as it existed on the Petition Date, was "adequately protected." See 11 U.S.C. §§ 361 and 363(e).

The Debtor argued that BankRI's claim was fully secured as of the Petition Date and that the value of its secured claim was adequately protected by the Debtor's equity in the collateral over and above the amount of the BankRI's claim. (Memorandum of Law in Support of Debtor's Emergency Motion for Orders (1) Approving Use of Cash Collateral, and (2) Setting Procedures for Notice and Hearing, p. 5). BankRI countered that the collateral which secured its claim was worth less than the amount of the claim and, therefore, that BankRI's claim was not protected by an equity cushion. (Cash Collateral Order, p.1).

During six days of evidentiary hearings, the Debtor presented evidence to establish that: 1) the Real Estate has a fair market value of $2.2 million (JPTO, ¶ 9), 2) the Debtor's equipment and inventory had a liquidation value of approximately $500,000 to $600,000 (Debtor's Exhibit 2, p. 2, Transcript, Sep. 19, 2007. p. 94) and 3) the Debtor had accounts receivable of approximately $1,143,716 as of August 31, 2007 after accounting for differing reimbursement rates of various insurance

companies (contractual reserves) and bad debt reserves. (Debtor's Exhibit 1, p. 2; BankRI Exhibit 23, p.2).

The Debtor also presented evidence demonstrating that examiners working for BankRI determined that the bank was oversecured by $443,000 as of June 29, 2007. (BankRI Exhibit 20, p. 10). In reaching this conclusion, the bank's examiner, Patricia Pothier, did not attribute any value to the Debtor's inventory and discounted all other collateral values to reflect bank lending formulas.[4] (BankRI Exhibit 20, p. 10). BankRI itself determined that the value of its collateral, after mistakenly omitting inventory and discounting all other collateral to "lendable value," was $3,120,000 on June 18, 2007. (Debtor's Exhibit 4, p. 2). Therefore, only seventy eight days prior to the Petition Date BankRI had determined that it was oversecured by more than one half million dollars even when valuable sources of collateral were ignored and/or deeply discounted to "lendable value".

BankRI did not offer any competing evidence to suggest that the values presented by the Debtor were inaccurate. Rather, BankRI argued that the Debtor's accounts receivable reporting system was unable to produce detail of a limited number of specific transactions without considerable effort (Transcript, Sep. 21, 2007, p. 72) and therefore, approximately $1.1 million in accounts receivable should be completely ignored. (Transcript, Sep. 5, 2007, pp. 20-21). However, testimony by BankRI's examiner indicated that this complication affected only twenty to twenty five percent of the total

[4] Receivables under ninety days were valued at seventy five percent of face value and all receivables over ninety days were ignored entirely. (BankRI Exhibit 20, p.10) The Debtor presented testimony that accounts receivable in its line of business often take more than ninety days to be paid due to the complications of dealing with various medical insurance companies and that this does not necessarily affect whether the aged receivables are collectable. (Transcript, Sep. 17, 2007, pp.20-23). BankRI's examiner valued equipment at ten percent of book value. (BankRI Exhibit 20, p.10). The Real Estate was valued at eighty percent of its appraised value (as supplied by BankRI). (BankRI Exhibit 20, p.10).

accounts receivable.[5] (Transcript, Sep. 21, 2007, p. 71). Furthermore, BankRI's examiner stated that the Debtor's inability to print a detailed transaction report regarding certain categories of receivables did not mean that the accounts receivable did not exist or that the Debtor's receivables' reports were inaccurate. (Transcript, Sep. 21, 2007, p.72).

BankRI also argued that the value of the Real Estate, owned by a non-Debtor third party, should be discounted by some unknown percentage to reflect what would be realized at a hypothetical liquidation sale (Transcript, Sep. 19, 2007, p. 16). BankRI attempted to establish, paradoxically, that the accounts receivable which it contended had no value were being consumed by the Debtor to fund its operations and not being replenished. (Transcript, Sep. 21, 2007, p. 122). Based upon these arguments, BankRI asked that the Bankruptcy Court deny the Debtor's request to use cash collateral and put an immediate end to the Debtor's operations.

On October 5, 2007 the Bankruptcy Court entered an Order Allowing Use of Cash Collateral ("Cash Collateral Order"). The Bankruptcy Court found that BankRI's secured claim was adequately protected by an equity cushion even if, as BankRI had suggested, approximately $1.1 million in accounts receivable were completely ignored for the purposes of the calculation. (Cash Collateral Order, p.3). The Bankruptcy Court explicitly did not determine that the actual value of the accounts receivable was zero, only that they need not be considered in order to determine that BankRI is adequately protected. (Cash Collateral Order, pp. 2, 3). In determining that BankRI's secured claim was adequately protected the Bankruptcy Court found as follows:

---

[5] According to the Bankruptcy Court BankRI consumed an "inordinate" amount of time critiquing the Debtor's accounts receivable system. The Bankruptcy Court determined that the value of the accounts receivable was "not dispositive of the question: Is BankRI's $2.5 million claim adequately protected…?" (Order Allowing Use of Cash Collateral , p. 2).

1. The fair market value of the Real Estate is $2.2 million and that the fair market value was the proper standard of valuation under the circumstances of this case;

2. A conservative estimation of value of the Debtor's medical equipment and machinery is $253,700 even at liquidation value;

3. The value of the Debtor's vehicles and inventory is $125,000; and

4. The valuation of BankRI's additional collateral was unnecessary given that the assets which were valued adequately protected BankRI's secured claim by themselves.

(Cash Collateral Order, p. 4) The value of these assets alone, $2,578,700, exceeded the amount of BankRI's claim by more than $100,000. (JPTO, ¶ 6). Consequently, the Bankruptcy Court found that BankRI was adequately protected by an equity cushion and authorized the use of cash collateral for sixty days.[6] This appeal followed.

## IV. ARGUMENT

### A. The Debtor's use of cash collateral is dependent upon adequate protection of BankRI's secured claim.

Section 363(a) of the Bankruptcy Code states in relevant part, "In this section, 'cash collateral' means cash…in which the estate and an entity other than the estate have an interest." The decision of whether to authorize the use of cash collateral is essentially the decision of whether to allow a debtor the opportunity to reorganize. A chapter 11 debtor may not use cash collateral to fund its operations unless the entity which has an interest in the cash consents or the bankruptcy court authorizes the use of cash collateral after notice and a hearing. 11 U.S.C. § 363(c)(2). Upon request by an entity with an interest in cash collateral, a debtor's use of the cash shall be prohibited or conditioned

[6] The authority to use cash collateral has been subsequently extended by the Bankruptcy Court and the Debtor has continued to operate.

upon adequate protection of a secured claim. 11 U.S.C. § 363(e). The Debtor concedes that BankRI has an interest in the Debtor's cash and, therefore, that the Debtor's cash is cash collateral which can be used only if BankRI's secured claim is adequately protected.

### B. An equity cushion is sufficient in itself to adequately protect a secured claim

Adequate protection is not defined by the Bankruptcy Code. In re Aegean Fare, Inc., 33 B.R. 745, 747 (Bankr. D. Mass. 1983). The requirement of adequate protection of secured claims in bankruptcy is "derived from the fifth amendment protection of property interests." H.R.Rep. No. 95-595 at 338-39 (1977), reprinted in 1978 U.S.C.C.A.N. p. 5963, 6295. Adequate protection is protection against the decline in value of a secured creditor's lien while the creditor is restrained from enforcing its lien by § 362's automatic stay. See United States v. Smithefield Estates, Inc. (In re Smithfield Estates, Inc.), 48 B.R. 910, 914 (Bank. D.R.I. 1985); In re Aegean Fare, Inc., 34 B.R. at 968-69. However, "Adequate protection…is not a guarantee, rather it is protection against unreasonable risk." In re Elliott Leases Cars, Inc., 20 B.R.893, 896 (Bankr. D.R.I. 1982)(emphasis added).

There are numerous means of providing adequate protection to a secured claim, only some of which are set forth in § 361 of the Code. In re T.H.B. Corp., 85 B.R. 192, 194 (Bankr. D.Mass. 1988). The secured guarantee of a non-debtor is one means of assuring that a secured claim is adequately protected. Id. See also H.R.Rep. No. 95-595, at 340 (1977)(stating "another form of adequate protection might be the guarantee by a third party outside the judicial process."). Such a secured guarantee may provide a creditor a cushion of security over and above the total amount of the creditor's claim. See In re T.H.B. Corp., 85 B.R. at 194 (compiling cases). This "equity cushion" is a well

recognized form of adequate protection. Baybank-Middlesex v. Ralar Distributors, Inc, 69 F.3d 1200, 1203 (1st Cir. 1995).

The first logical step in an equity cushion analysis is to determine the value of a secured claim in relation to the collateral which secures it. Id. Only the secured portion of a creditor's claim is entitled to adequate protection. See In re Old Winthrop Farms Nurseries, Inc. v. New Bedford Institution for Sav. (In re Winthrop Old Farms Nursery, Inc.), 50 F.3d 72, 74 (1st Cir. 1995) (stating, "valuation for [adequate protection] purposes necessarily looks to §506(a) for the determination of the amount of a secured claim"); In re Lane, 108 B.R.6, 8 (Bankr. D. Mass. 1989); In re Aegean Fare, Inc., 34 B.R. at 968. A creditor's claim in bankruptcy "is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property." 11 U.S.C. § 506(a). Stated differently, if the amount of a creditor's claim exceeds the value of the collateral which secures it then the creditor's secured claim is limited to the value of the collateral and the creditor is undersecured. See United Sav. Ass's of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 368, 108 S.Ct. 626, 629 (1988). However, when the value of collateral exceeds the debt which it secures, the value of a creditor's secured claim is limited to the amount of the debt. In re Lane, 108 B.R. at 8. The margin between the amount of the secured claim and the value of the collateral is an equity cushion which ensures that the collateral's use or depreciation will not effect the creditor's secured position. See Ralar Distributors, Inc., 69 F.3d at 1203; First Fidelity Bank v. Public Service Co. of New Hampshire (In re Public Service Co. of New Hampshire), 879 F.2d 987, 989-990 (1st Cir. 1989).

BankRI attempts to persuade this Court that some protection in addition to an equity cushion was necessary for the Bankruptcy Court to authorize the use of cash collateral. (Appellant's Opening Brief, p. 19). BankRI correctly states that "the 'equity cushion' test is not the sine-qua-non in an adequate protect [sic] determination." (Appellant's Opening Brief, p. 14.) (emphasis omitted) However, BankRI misunderstands the meaning of that statement. "Sine qua non," literally translated, means "without which not." Black's Law Dictionary 1390 (7th ed. 1999). Those courts which point out that an equity cushion is not the sine qua non of adequate protection are only stating the generally accepted proposition that an equity cushion is not necessary in order to establish adequate protection. See In re Dynaco Corp., 162 B.R. 389, 398 (Bankr. D.N.H. 1993)(stating, "the appropriate test for determining adequate protection…does not require that a secured claimant be protected by an 'equity cushion.'"); In re Triplett, 87 B.R. 25, 26 (Bankr. S.D. Tex. 1988)(stating, "With ordinary collateral, an equity cushion is generally considered to be sufficient (although not necessary)"); In re Smithfield Estates, Inc., 48 B.R. at 914(stating, "While an equity cushion is generally considered prima facie evidence of adequate protection, the absence of an equity cushion does not establish the converse, i.e. that as a matter of law the creditor is not adequately protected").

When no equity cushion exists, courts correctly demand that the collateral of an undersecured creditor remain relatively stable while the debtor attempts to reorganize because any diminution in collateral values reduces the secured position of the creditor

and increases the portion of its claim which is unsecured.[7] See In re Dynaco, 162 B.R. at 398; In re Smithfield Estates,Inc., 48 B.R. 914-15. When an equity cushion exists, however, it is sufficient in itself to adequately protect a secured claim. See In re Dynaco, 162 B.R. at 398. Therefore, the lengthy arguments of BankRI concerning the Debtor's operational results and financial reporting do nothing but divert the focus of the Court from where it properly belongs: the value of the Debtor's assets.

### C. The Bankruptcy Court properly concluded that BankRI'S equity cushion was itself sufficient to provide adequate protection

As previously explained, the Bankruptcy Court determined that BankRI was protected by an equity cushion in excess of $100,000 without considering approximately $1.1 million in accounts receivable, assorted equipment and other valuable sources of collateral which were acknowledged but not valued in the Cash Collateral Order. (Cash Collateral Order, pp. 4-5; Debtor's Exhibit 2, p. 2). The valuation of this additional collateral was rendered unnecessary by the fact that adequate protection had already been found. (Cash Collateral Order, pp. 4-5). The consequence of the Court's finding is that BankRI remains adequately protected by an equity cushion until depreciation of the assets providing the equity cushion eliminates that cushion and leaves BankRI undersecured. See In re Triplett, 87 B.R. 25, 27 (Bankr. W.D. Tex. 1988). The diminution of the Debtor's accounts receivable does not result in an erosion of BankRI's secured claim because the accounts receivable were not necessary to the calculation of the bank's equity cushion. Therefore, this alleged diminution is irrelevant for the purposes of this

[7] However, even the claim of undersecured creditor is adequately protected as long as the value of its secured portion is not decreasing. See Timbers of Inwood Forest Associates, Ltd., 484 U.S. at 382, 108 S.Ct. at 636.

appeal. See In re Lane, 108 B.R. at 8 (stating, "there is no lack of adequate protection when the equity cushion above [the] amount [of a secured claim] is eroding through either a decline in collateral value or an increase in the claim due to the accrual of interest or expenses").

**D. The Bankruptcy Court correctly determined that fair market value is the standard of valuation which applies to assets which will be retained and used.**

The foregoing analysis is only background. The operative question before the Court is whether the Bankruptcy Court correctly determined that an equity cushion exists. The Bankruptcy Court found that an equity cushion existed based upon the following collateral: the Real Estate's fair market value of $2.2 million, assorted equipment with a liquidation value of $253,700, and vehicles and inventory with a liquidation value of $125,000. (Cash Collateral Order, p. 4).

*1. BankRI mischaracterizes the Bankruptcy Court's evaluation of its collateral.*

Before discussing the proper valuation of collateral it is important to recognize certain mischaracterizations made by BankRI concerning the Bankruptcy Court's findings in the Cash Collateral Order. BankRI claims that $1,143,716 of accounts receivable were properly treated as worthless by the Bankruptcy Court. (Appellant's Brief, p. 18). This statement completely ignores the fact that the accounts receivable were not valued because they were not essential to the finding of adequate protection. (Cash Collateral Order, p. 2). Indeed, BankRI fails to explain how approximately $283,000 in "valueless" accounts receivable could be paid and the cash spent by the Debtor in its ongoing business operations. (Appellant's Brief, p. 20). Additionally, BankRI

disingenuously states that, "The [Bankruptcy] Court ultimately determined that the total value of the collateral assets securing the Indebtedness to the Bank was $2,578,700." (Appellant's Brief, p.13). In fact, the Cash Collateral Order makes clear that the bank enjoys a security interest in additional collateral, but its valuation was unnecessary for a determination of adequate protection. (Cash Collateral Order, pp. 2, 5). The fact that additional collateral was acknowledged by the Bankruptcy Court but not valued would require remand of the case for valuation of this additional collateral in the event BankRI prevails on its argument concerning the value of the Real Estate.

*2. The Bankruptcy Court properly determined that fair market value should be attributed to the Real Estate for the purpose of determining whether BankRI's secured claim is adequately protected.*

In calculating the bank's equity cushion, the Bankruptcy Court determined that the Real Estate should be valued at its stipulated fair market value. (Cash Collateral Order, p. 4). This determination is a factual one because the Bankruptcy Court's choice of valuation standard necessarily depended upon the facts and circumstances of the case. See Matter of Vitreous Steel Products Co., 911 F.2d at 1232-33. (Cash Collateral Order, p. 4).

In support of its argument that the Real Estate should have been valued on a liquidation basis, BankRI relies upon the following cases from within the First Circuit: In re Demakes Enters., 145 B.R. 362 (Bankr. D.Mass. 1992); In re Ledgmere Land Corp., 125 B.R. 58 (Bankr. D. Mass. 1991); In re Robbins, 119 B.R. 1 (Bankr. D. Mass. 1990),

and In re T.H.B Corp., 85 B.R. 192 (Bankr. D. Mass. 1988).[8] (Appellant's Brief, p. 15). Each of these cases was considered and their reasoning rejected by the Court of Appeals for the First Circuit in In re Old Winthrop Farms Nursery, Inc.. 50 F.3d 72, 74 n.3, 75 (1st Cir. 1995). While Old Winthrop Farms did not directly address the issue of adequate protection, its reasoning and outcome are applicable to and should dictate the outcome of this appeal.

In Old Winthrop Farms, a secured creditor objected to its treatment under a chapter 11 plan of reorganization because the debtor had valued its real estate at stipulated liquidation value of $300,000. 50 F.3d at 73. The use of liquidation value would allow the debtor to minimize the amount paid to the secured creditor over the life of the reorganization plan. See 11 U.S.C. § 1129(b)(2)(A)(i)(II); id. In objecting to this treatment, the secured creditor sought a determination that the debtor's real estate should be valued at $400,000, its stipulated fair market value. 50 F.3d at 73. The bankruptcy court and district court both determined that the proper standard of valuation of the real estate, which the debtor intended to retain and use in its operations, was fair market value. Id. The Court of Appeals set out to determine the proper standard for valuation of the collateral, and by extension the value of the creditor's secured claim. Id.

The court's analysis began with the uncontroversial proposition that the amount of a secured claim is equal to the value of the secured creditor's interest in the estate's

---

[8] It is worth noting that a case relied upon by BankRI, In re T.H.B. Corp., actually supports the view that the fair market value is the proper standard of valuation for the Real Estate. 85 B.R. at 194. In In re T.H.B. Corp., the bankruptcy court determined that a secured creditor was adequately protected by an equity cushion such that the debtor would be authorized to use cash collateral in its attempted reorganization. Id. Included within the secured creditor's collateral were substantially all of the debtor's business assets and the personal residence of the debtor's principal. Id. In calculating the equity cushion which protected the secured creditor's claim, the court ascribed liquidation value to all of the debtor's business assets. Id. However, in the equity cushion calculation, the residence of the Debtor's principal was valued at its stipulated fair market value. Id.

interest in the collateral. Id. at 73-74; see 11 U.S.C. § 506(a); p.9 supra. Therefore, the crux of the issue before the court was the value of the debtor's interest in the real estate—a question that turned on the standard of valuation to be employed. The second sentence of § 506(a) of the Bankruptcy Code, entitled "Determination of Secured Status" states, "value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." The First Circuit determined that fair market valuation was the appropriate standard under the circumstances of the case because the debtor proposed to retain the real estate at issue and generate income through its use. In re Old Winthrop Farms Nursery, Inc., 50 F.3d at 75.

In reaching this conclusion the First Circuit rejected the reasoning of In re Demakes Enters., In re Ledgmere Lan Corp., In re Robbins, and In re T.H.B Corp. because each of them rendered the second sentence of 506(a) meaningless. Id. at 76. Each of the rejected cases focused on the amount realizable by a foreclosing creditor while not acknowledging that a debtor in bankruptcy may prevent a foreclosure or liquidation sale. See id. at 75 (stating, "By retaining collateral, a Chapter 11 debtor is ensuring that the very event [the debtor] proposes to use to value the property-a foreclosure sale-will not take place.") Compare In re Demakes Enters., 145 B.R. at 367-68; In re Ledgmere Land Corp., 125 B.R. at 61-62; In re Robbins, 119 B.R. at 4, and In re T.H.B Corp., 85 B.R. at 195-96 with Associates Commercial Corp. v. Rash, 520 U.S. 953, 964, 117 S.Ct. 1879, 1886 (1997)(noting that valuation need not be limited to the amount secured creditors could realize under state law because the Bankruptcy Code

displaces a secured creditor's state law remedies and imposes its own order of valuation). If valuation in bankruptcy were as simple as determining what a secured creditor could obtain through its state law remedies there would almost never be occasion for valuation of collateral at other than liquidation value.

Instead of focusing on what a secured creditor could obtain through exercising its state law remedies, the First Circuit determined that value should be determined in light of the proposed use of collateral. In re Old Winthrop Farms Nursery, Inc., 50 F.3d at 74, 76. Only this method of valuation would give meaning to both sentences of § 506(a). Id. at 75-76. Therefore, if a debtor proposes to surrender collateral to a secured creditor so that it may be auctioned, ascribing liquidation value to the collateral may be appropriate. However, when collateral is not going to be liquidated there is no logical reason to value the collateral as if it were. See In re Old Winthrop Farms Nursery, Inc., 50 F.3d at 75; see also Taffi v. United States (In re Taffi), 68 F.3d 306, 308 (9th Cir. 1997).

In an effort to distinguish Old Winthrop Farms from the instant case, BankRI states, "a fair market value was applied in the context of the court having to make a determination under 11 U.S.C. § 506(b) of the proper classification of a lender's secured claim."[9] (Appellant's Brief, p. 16 n.6). However, nowhere in Old Winthrop Farms is § 506(b) of the Bankruptcy Code even mentioned and even a cursory reading of the case shows that it is not distinguishable on this basis. Old Winthrop Farms dealt with the valuation of collateral for the purposes of calculating the value of a secured claim under §506(a). In re Old Winthrop Farms Nursery, Inc., 50 F.3d at 76. In fact, The Old Winthrop Farms court specifically recognized that its reasoning may be applicable

---

[9] Section 506(b) deals with the allowance of interest and other contractual charges for oversecured creditors.

outside the plan confirmation context presented because a determination of adequate protection under § 361 of the Bankruptcy Code "necessarily looks to § 506(a) for a determination of the amount of a secured claim." In re Old Winthrop Farms, Inc., 50 F.3d at 74.

A close reading of § 506(a) itself is all that is necessary to justify the holding of Old Winthrop Farms. Pared down to its applicable parts, the second sentence of § 506(a) states that collateral "value shall be determined in light of…the proposed use and in conjunction with any hearing on such…use." Under the circumstances, the proposed use of the real estate is its retention by Sandy Bottom and continued generation of income through rentals. The fair market value of commercial real estate is typically derived by reducing the future stream of rental income to present value. See In re Old Winthrop Farms Nursey, Inc., 50 F.3d at 75. Therefore, the future rental of the Real Estate ensures that fair market value is the appropriate measure of the value that will be derived from its "proposed use." [10] See 11 U.S.C. § 506(a); id.

[INTENTIONALLY LEFT BLANK]

[10] Although the Bankruptcy Court employed a liquidation standard in valuing the Debtor's equipment, it appears that it did so in order to be conservative. (Cash Collateral Order, p. 4)(stating, "I find *conservatively*… the *forced liquidation value*")(emphasis in original).

## V. CONCLUSION

The Bankruptcy Court found that BankRI was adequately protected by an equity cushion of $100,000 even if net accounts receivable of over $1.1 million were completely ignored along with additional sources of security which were acknowledged but not valued. For this reason and for all of the foregoing reasons, Pawtuxet Valley Prescription & Surgical Center, Inc. respectfully requests that this Court affirm the Bankruptcy Court's Cash Collateral Order. In the alternative, the matter should be remanded to the Bankruptcy Court for a full evaluation of the collateral which was acknowledged by the Bankruptcy Court but not valued.

PAWTUXET VALLEY PRESCRIPTION &
SURGICAL CENTER, INC.

By its Attorneys,

/s/ Steven J. Boyajian
Andrew S. Richardson (#2608)
Steven J. Boyajian (#7263)
Boyajian, Harrington & Richardson
182 Waterman Street
Providence, RI 02906
Tel. (401) 273-9600
Fax. (401) 273-9605

C.A. No. 07-390S

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2008 I electronically filed Appellee's Opening Brief with the Clerk of the U. S. District Court using the CM/ECF System. The following participants have received notice electronically:

- **Steven J. Boyajian**
  steve@bhrlaw.com
- **Leonard J. DePasquale**
  leonard.j.depasquale@usdoj.gov
- **Andrew S. Richardson**
  andy@bhrlaw.com
- **Denean M. Russo**
  drusso@mwdglaw.com,mdaugherty@mwdglaw.com
- **Robert D. Wieck**
  rwieck@mwdglaw.com,mdaugherty@mwdglaw.com

/s/ Susanne Kershaw